Brassard, J.
Plaintiff, Teresa Chan (“Ms. Chan”) brings this action against defendant, Immunetics, Inc. (“Immunetics”), alleging breach of oral employment contract and wrongful termination and breach of the covenant of good faith and fair dealing. She also alleges violations of G.L.c. 151B and G.L.c. 149, §105D, infliction of emotional distress, defamation, and assault and battery against defendants, Immunetics and Nancy J. Levy (“Ms. Levy”). Pursuant to Mass.R.Civ.P. 12(b)(6), defendants move to dismiss plaintiffs claims for emotional distress and assault and battery, contending that these claims are barred by the Massachusetts Worker’s Compensation Act, G.L.c. 152, §24. Defendant also move to dismiss plaintiffs claim for defamation, alleging that plaintiff failed to plead the claim with the requisite degree of specificity. For the following reasons, defendants’ motion is ALLOWED in part and DENIED in part.
BACKGROUND
The following facts are taken from plaintiffs complaint, as they must be to evaluate the sufficiency of the pleadings. In the summer of 1996, the plaintiff, Ms. Chan, was offered employment by defendant, Immunetics. Ms. Chan began working for Immunetrics in September of 1996. Beginning in September 1996 and continuing through January 1998, defendant Ms. Levy, president of Immunetrics, told Ms. Chan on numerous occasions that the scientists of Russian origin that Ms. Chan supervised should be fired and replaced by “young Americans." Ms. Levy referred to the Russian scientists as the “Russian Gang.” The complaint further alleges that throughout this period, Ms. Levy pressured Ms. Chan to take actions which are prohibited by G.L.c. 151B, federal law, and Title VII. Ms. Chan opposed the discriminatory practices of Immunetrics and Levy.
In October 1997, Ms. Chan was promoted to Director of Product Development and Operations. In November 1997, the New York State Laboratory in Albany, New York, filed a complaint against Immunetrics for a mistake in one of its reagents. Upon notification of this complaint, Ms. Levy stormed into the laboratory and in the presence of several Russian scientists demanded to know if Ms. Chan was “going to fire all the Russians today or tomorrow?” At that time, Ms. Chan informed Ms. Levy that she refused to fire the scientists until the matter was investigated further. Ultimately, the investigation disclosed that someone other than the Russian scientists was responsible for the error in question.
After the November 1997 incident, the behavior and the attitude of Ms. Levy toward Ms. Chan became more antagonistic and hostile. During the remainder of Ms. Chan’s employment with Immunetics, Ms. Levy continued to be rude, sarcastic, and condescending toward her. Ms. Levy made Ms. Chan feel uncomfortable about her Chinese heritage. Ms. Levy continued to be openly critical about the continued employment of the Russian scientists, and repeatedly urged Ms. Chan to replace them with American workers.
On many occasions, Ms. Chan complained about defendants’ failure to follow safety guidelines and various FDA regulations involving the testing, manufacturing, and distribution of products. As a result of Ms. Chan’s complaints concerning the failure of Immunetics and Levy to follow FDA regulations and appropriate safety guidelines, the defendants threatened, harassed, and eventually demoted her.
On Januaiy 5, 1998, Ms. Levy confronted Ms. Chan and asked her if she planned to fire the Russian scientists trader her supervision. Ms. Chan advised Ms. Levy that she had no “good cause” to terminate these employees. Within days after the January 5, *720 1998 meeting, Ms. Levy announced that Immunetics was restructuring and that it would be eliminating Ms. Chan’s current position and consequently, Ms. Chan was demoted. Ms. Chan advised Ms. Levy of her refusal to accept the demotion and that she was resigning. When Ms. Chan attempted to discuss her decision and the impropriety of defendants’ actions with Ms. Levy, Ms. Levy insisted that Ms. Chan had resigned and was no longer an employee of Immunetics. Ms. Chan claimed that she had been wrongfully terminated. Ms. Levy then assaulted and battered Ms. Chan as she dragged her out of the building.
Before and after Ms. Chan was forced out of her employment with Immunetics, Ms. Levy made a series of false and defamatory statements about Ms. Chan to third parties, stating that Ms. Chan was responsible for production problems, that she did not want to pay Russian workers a fair salary, and that she could not manage her workers. Ms. Chan contends that these statements have damaged her reputation and caused her extreme and severe emotional distress.
Moreover, after Ms. Chan’s termination from Immunetics, Ms. Levy instructed managers to give a bad recommendation to any of Ms. Chan’s prospective employers. Specifically, Ms. Levy told the managers that, among other things, they are to tell third parties thatMs. Chan was a poor manager ofworkers, responsible for production problems, and responsible for Immunetics’ failure to follow accepted regulatory and safety procedures, and that in general, Ms. Chan was not a good employee. Paul Donahue, a manager of Immunetics was overheard giving Ms. Chan’s prospective employer a very bad recommendation. Ms. Chan contends that as a result of this, she has been unable to obtain new employment.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the Court must accept as true the well pleaded factual allegations of the complaint, as well as any inference which can be drawn therefrom, in the plaintiffs favor. Nader v. Citron, 372 Mass. 96, 98 (1977). The complaint should be construed to assure substantial justice. Ourfalian v. Aro Mfg. Co., 31 Mass.App.Ct. 294, 296 (1991). Accordingly, the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle him to relief. Nader, supra at 98.
Infliction of Emotional Distress and Assault and Battery
Pursuant to G.L.c. 152, §24, “an employee shall be held to have waived his right of action at common law ... in respect to an injuiy that is compensable under this chapter, to recover damages for personal injuries ...’’ Thus, under Massachusetts law, the Worker’s Compensation Act provides the exclusive remedy for personal injuries sustained while in the course of or arising out of an employee’s employment. Common law actions are barred by the exclusivity provision of the Worker’s Compensation Act where the “plaintiff is shown to be an employee; his condition is shown to be a ‘personal injuiy within the meaning of the act; and the injuiy is shown to have arisen ‘out of and in the course of . . . employment.’ ” Green v. Wyman-Gordon, 422 Mass. 551, 558 (1996) quoting Foley v. Polaroid Corp., 381 Mass. 545, 548-49 (1980).
Infliction of emotional distress, whether intentional or negligent,[1] is compensable under the Worker’s Compensation Act and therefore the exclusivity provision of the act applies. Green, supra at 558-60. Plaintiff argues that her claim for infliction of emotional distress against Ms. Levy should not be dismissed because her actions were not related to the interests of the employer. This argument is without merit.
, Barring certain exceptions, intentional torts are covered by the Worker’s Compensation Act, even when they are committed by co-employees. Doe v. Purity Supreme, Inc., 422 Mass. 563, 565 (1996). An employee is not barred from bringing an action against a fellow employee who commits an intentional tort which “was in no way within the scope of employment furthering the interests of the employer.” Anzalone v. Massachusetts Bay Transportation Authority, 403 Mass. 119, 124 (1988). However, a suit for an intentional tort in the course of the employment relationship is barred by the exclusivity provision of the Worker’s Compensation Act, unless the employee has reserved his rights pursuant to G.L.c. 152, §24. Id.
Ms. Chan acknowledges in her complaint that at all times relevant thereto, Ms. Levy was acting in her role as president of Immunetics. Thus, because Ms. Levy was acting in her role as president of the company and therefore acting in the interests of the employer, the exclusivity provision of the Worker’s Compensation Act is applicable. G.L.c. 152, §24. Accordingly, the common law claim for infliction of emotional distress must be dismissed as a matter of law. Id. However, to the extent that Ms. Chan’s complaint can be fairly read to allege either negligent or intentional infliction of emotional distress which arises from conduct allegedly occurring after the termination of her employment, this motion to dismiss is denied.
The assault and battery claim arises from an act that occurred immediately after Ms. Chan was either terminated or resigned from Immunetics. However, even though an employee may have quit or been fired, his compensation protection is not immediately terminated. Zygmuntowitz v. American Steel & Wire Co., 240 Mass. 421, 424 (1922). An injury sustained while the employee is winding down his affairs is compensable, as in the course of his employment. Id.[2] Therefore, the exclusivity provision of the Worker’s Compensation Act would apply and the claim for assault and batteiy must be dismissed as a matter of law. G.L.c. 152, §24.
Defamation
In order to prevail on a claim for defamation, a plaintiff must prove that there was a “false and defam *721 atory written communication of and concerning the plaintiff’ which was published to a third party. McAvoy v. Shufrin, 401 Mass. 593, 597 (1988). “A publication is defamatory when it tends to injure one’s reputation in the community and expose him to hatred, ridicule, and contempt.” Brauer v. The Globe Newspaper Co., 351 Mass. 53, 55-56 (1966).
Ms. Chan has asserted in her complaint that Ms. Levy made a series of false and defamatory statements about her to third parties and instructed managers to do the same. Specifically, prospective employers were told that Ms. Chan was responsible for production problems, that Ms. Chan did not want to pay Russian workers a fair salary, that Ms. Chan could not manage her workers, that Ms. Chan was responsible for Immunetics’ failure to follow accepted regulatoiy and safety procedures, and that in general Ms. Chan was not a good employee. Ms. Chan further alleges that these statements have damaged her reputation and caused her severe and extreme emotional distress. Given these allegations asserted in the complaint, it does not appear beyond a doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. Nader, supra at 98.[3]
Immunetics and Ms. Levy argue that even if Ms. Chan has met the pleading requirements, her defamation claim should nonetheless be dismissed because she has failed to plead facts sufficient to overcome defendants’ conditional privilege when responding to job reference inquiries. For the following reasons, this court disagrees. It is well established that “a person may possess a conditional privilege to publish defamatory material if the publication is reasonably necessary to the protection or furtherance of a legitimate business interest.” Bratt v. International Business Machines Corp., 392 Mass. 508, 512-13. An employer can lose this privilege only if the plaintiff shows that the disclosure resulted from an expressly malicious motive, was recklessly disseminated, or involved a reckless disregard for truth or falsity of the information. Id. at 515-16. The burden is on the defendant to show the facts which create the qualified privilege. Humphrey v. National Semiconductor Corp., 18 Mass.App.Ct. 132, 134 (1984), citing Bander v. Metropolitan Life Ins. Co., 313 Mass. 337, 343 (1943). Once the defendant establishes this privilege, the burden shifts back to the plaintiff to prove that the privilege has been abused. Humphrey, supra, citing Retailers Commercial Agency, Inc., petitioner, 342 Mass. 515, 520 (1961).
This action is presently before this court as a motion to dismiss. Accordingly, this court is confined to evaluating the sufficiency of the complaint. Mass.R.Civ.P. 12(b)(6). In order for the defendants to show facts which create a conditional privilege and for the plaintiff to meet its burden of showing that the privilege has been abused, additional materials containing relevant factual information, would need to be considered. Thus, a motion to dismiss is not the correct vehicle to attack a plaintiffs defamation claim by asserting a conditional privilege. See Reardon v. Comm’r of Correction, 20 Mass.App.Ct. 946, 947 (1985) (“a rule 12(b)(6) motion is ordinarily not the proper vehicle for testing the factual sufficiency of plaintiffs claims”; a motion for summary judgment is more appropriate).
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants’ motion to dismiss plaintiffs claim for infliction of emotional distress and assault and battery be ALLOWED, except as to the claims for infliction of emotional distress that allegedly arose out of conduct occurring after plaintiffs termination. It is further ORDERED that defendants’ motion to dismiss plaintiffs claims for defamation be DENIED.

 An action for negligent infliction of emotional distress that is not the result of a bona fide personnel action is barred by the exclusivity provision of the worker’s compensation act. Green, supra at 560.

 In Zygmuntowicz, the assault occurred in the course of the plaintiffs employment when he was on the premises of the employer, objecting to his discharge, and in the act of getting his identifying check, with which to enable him to leave the and enter the premises. Supra at 424.

 Immunetics and Ms. Levy rely on Dorn v. Astra USA, 975 F.Supp. 388, 395-96 (D.Mass. 1997), to support their contention that because defamation claims are disfavored actions, a claim for defamation will not survive a motion to dismiss unless it satisfies strict pleading requirements. The Dorn case states that 'The Massachusetts Supreme Judicial Court has stated that defamation traditionally is a disfavored action, and that courts have applied a stricter standard to complaints for defamation by requiring defamation plaintiffs to plead the elements of their claim with specificity in order to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(c).’’ However, the Massachusetts case cited by Dorn states that some federal courts, not just courts in general, have applied this stricter standard, an essential qualifier left out in the Dorn decision. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 432 n. 7 (1991) (emphasis added). There is no indication in the decision that Massachusetts courts should apply this stricter standard.